IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | &#124; |
| | &#124;  CRIMINAL INDICTMENT NO.: |
| v. | &#124;  1:13-CR-343-WBH-JSA |
| | &#124; |
| CEDRIC BARBER | &#124; |

## REPORT AND RECOMMENDATION

On August 27, 2015, a federal grand jury in this district charged Defendant with being a felon-in-possession of a firearm in violation of Title 18, U.S.C., §§ 922(g)(1) and 924(e).  The matter is now before the Court on Defendant's Motion to Suppress Statements [41] and Motion to Suppress Identification Testimony [42]. The Court **RECOMMENDS** that Defendant's Motion to Suppress Identification Testimony be **DENIED**, as moot, because the Government has represented that it will not introduce evidence of the challenged identification at trial.  As explained further below, the Court further **RECOMMENDS** that Defendant's Motion to Suppress Statements [41] be **DENIED IN PART AND GRANTED IN PART**. The Court also **RECOMMENDS** that Defendant's *Pro Se* Motion to Dismiss [53] be **DENIED**.

## BACKGROUND

A.    *Testimony at the Initial Evidentiary Hearing*

On January 20, 2015, the Court held an evidentiary hearing [57] on Defendant's Motion to Suppress Identification Testimony [42] and Motion to Suppress Statements [41]; *see* Transcript of Hearing [59] ("1st Hearing Tr.").  At the commencement of the hearing, Government counsel represented that the Government would not seek to introduce evidence at trial regarding an identification made by the robbery victim during a show-up of Defendant, thus mooting the Defendant's Motion to Suppress Identification Testimony.  *See* 1st Hearing Tr. at 3.  The sole witness at the hearing was Atlanta Police Officer Joseph Daniels, who stopped, arrested and obtained statements from Defendant.

Daniels explained that he was patrolling the area of Chapel Road and Joseph E. Boone Boulevard in Atlanta on February 21, 2013.  *Id.* at 8.  He received a call stating that a pedestrian had been robbed nearby, and that the pedestrian had described the assailant as a "black man on crutches."  *Id.*  Shortly thereafter, Daniels saw the Defendant, a black man who was using a crutch, walking down the street.  *Id.* at 8-9 Daniels got out of his car, in uniform, and asked if the Defendant would speak to him.  *Id.* at 18.  The Defendant did not respond, began to walk in the opposite direction, and Daniels saw that he "reached into his waistband," and tossed a "silver object" away.  *Id.* at 9, 18.  Daniels then drew his weapon and

ordered the Defendant to stop, which he did.  *Id.* at 10, 18.  By this point, another officer, Officer Jones, had arrived as backup.  *Id.* at 10.  Daniels left the Defendant in Jones's custody, and went to attempt to retrieve the silver object.  *Id.* at 10, 26. Daniels found a silver .380 caliber handgun.  *Id.*  Defendant was arrested at that time .  *Id.*

As Daniels returned to where Jones and the Defendant were standing, Daniels said to Jones, "I found it."  *Id.* at 11.  In response, the Defendant stated, "I didn't have a gun."  *Id.* at 11.  This was prior to the furnishment of any *Miranda* warnings.  Daniels also testified that, according to Jones, the Defendant told Jones while they were alone together that "I didn't rob anybody," prior to the officers mentioning any robbery  *Id.*[1]

After placing Defendant in the police car, Daniels read the Defendant his *Miranda* rights verbatim from the standard *Miranda* card issued by the Atlanta Police Department.  *Id.* at 12; Supp. Ex. [58].  Daniels did not threaten Defendant or promise him anything, and the Defendant appeared to understand the conversation.  *Id.* at 13.  The Defendant thereafter agreed to waive his rights and

---

[1] Jones did not testify, and Daniels did not hear the conversation between Jones and the Defendant.  The Government did not otherwise put on any evidence to establish the nature of that conversation and, in particular, to prove that it did not qualify as illegal pre-*Miranda* interrogation.  Thus, the Government now represents that it will not utilize the Defendant's "I didn't rob anybody" statement to Officer Jones at trial.  Gov't Supp. Br. [72] at 2.

made admissions to the officers about his possession of the gun.  *Id.* at 14.

B.   *Defendant's Request To Re-Open The Evidentiary Hearing*

At the evidentiary hearing, Government counsel indicated that she had just become aware that there had been a second post-*Miranda* statement obtained by a different investigator, which (unlike the statement to Daniels) was evidenced by a recording.  *Id.* at 4.  Government counsel indicated that they were unprepared to introduce proof of the circumstances relating to that statement at the January 20 hearing but would seek leave to introduce such proof at a later time if the Government were to decide to rely on that statement.  *Id.*  The Government proceeded to elicit evidence as to the circumstances relating to the allegedly separate statements to Officer Daniels, as explained above.

Things got much more confusing, however, after the January 20 evidentiary hearing.  Instead of filing a substantive post-hearing brief, Defendant filed a Motion to Reopen Suppression Hearing Evidence [63] on March 6, 2015. According to defense counsel, upon review of the supposed second post-*Miranda* confession identified by the Government on the morning of the evidentiary hearing, and upon consultation with the Defendant, the Defendant was contending that he only gave a single post-*Miranda* confession, which was the recorded one that Government counsel claimed was the second statement.  *Id*. at 1.  In other words, according to Defendant, to the extent that he made post-*Miranda* statements

on the day of arrest, as Officer Daniels testified, these were the same statements reflected in the recorded transcript, not, as the Government believed, a different interrogation.

Whether the recorded transcript in fact reflected the only statement or not is important because Defendant further alleged that in the recorded statement, "the detective improperly induces him by promising Mr. Barber that 'nothing would happen to him' if he answered questions." *Id.* The Court agreed to re-open the hearing to allow Defendant an opportunity to submit proof on this question and to allow the Government to introduce any evidence it wished to address this ambiguity. [66].

C.   *Second Evidentiary Hearing*

The Court convened a second evidentiary hearing on April 10, 2015. *See* Transcript of Hearing [69] ("2d Hearing Tr."). In opening remarks, Defense counsel repeated its position that there was only one post-*Miranda* confession, and that this was the one that recorded and referred to by the Government as the "second" post- *Miranda* confession. Government counsel repeated its position that the evidence would show the existence of two separate post- *Miranda* confessions, that is, the unrecorded one provided to Officer Daniels, and a subsequent one that was recorded taken by Detective George Denkins. *Id.* at 3-4.

The Government's sole witness at the April 10 hearing was Detective

Denkins.  Detective Denkins indicated that he conducted an interview of Cedric

Barber on February 21st , 2013, but that as of the date of the evidentiary hearing he

had no independent memory of that interview.  *Id.* at 6-7.  Denkins, however,

authenticated and introduced both an audio recording and a transcript of that

interview.  *Id.* at 7-9; Gov't Exs. 1 & 2.  As Denkins explained, and as the

transcript of the recording shows, Denkins did not separately furnish *Miranda*

warnings, because he instead determined that "the Officer over here" (presumably

Officer Daniels) had already read Defendant his rights and secured a waiver of

those rights.  Ex. 2 at 4.

The Defendant indicated to Detective Denkins that he (the Defendant) had

previously indicated to Officer Daniels that he would waive his rights and answer

questions.  Gov't Ex. 2 at 3.  Nevertheless, the Defendant expressed reluctance to

make statements to Detective Denkins at least outside the presence of his sister so

she could be a "witness of what is going on."  *Id.*  On several occasions at the

inception of the interview with Detective Denkins, the Defendant made statements

along the lines of "I don't wanna talk unless my sister is somewhere in my

presence, man."  *Id.* at 8.  The following exchange thereafter ensued:

> MR. BARBER: I just want her to be here cause that's how we do when
> we stand on the square.  If she in the presence of me, she gets to be --
>
> DETECTIVE: Is she trying to assure that nothing is going to happen to
> you?

MR. BARBER: Yeah.

DETECTIVE: ***There's nothing going to happen to you, I promise you that.***

Gov't Ex. 2 at 5 (emphasis added).  After some further requests for his sister to be present, which Denkins denied, Defendant subsequently proceeded to make incriminating statements.

The Defendant testified at the second evidentiary hearing.  First, relating to testimony that the Government elicited in the first hearing, the Defendant denied that Daniels, after finding the gun on the street, simply stated, "I found it." According to Defendant, Daniels rather stated directly to Defendant, "I found your gun."  2d Hearing Tr. at 18-19.  Officer Jones also asserted to Defendant, prior to any *Miranda* warnings, "you know you robbed that man." *Id.*  After these statements by the officers, according to Defendant, he made the alleged pre-*Miranda* statements denying that he committed a robbery or that the gun found by Daniels was his.

As to the post- *Miranda* statement(s), the Defendant testified that he only gave one such statement, and that it was to Detective Denkins.  According to Defendant, after being placed in the patrol car, "[i]t was the Caucasian officer [presumably, Officer Daniels] read me my rights."  2d Hearing Tr. At 20.  But the Defendant denied giving any statement to that officer.  *Id.*  Rather, "[t]he detective

[presumably, Detective Denkins] came and questioned me right after we had the Miranda, and he asked me would I answer his questions and I told him yeah.  And then the Detective walked up and he questioned me.  And that's who I gave my questions [sic.] to."  *Id.*

When asked about what he understood Denkins's promise that "nothing was going to happen to you" to mean, the Defendant explained, "I had no idea, but I know that I was in a situation that they saying I did something and I did not do it. And he kept – when he told me that nothing wasn't going to happen to me, then I felt comfortable about talking to him about what was going on."  *Id.* at 21.[2]

D.   *The Parties Post-Hearing Submissions*

Both parties filed post-hearing briefs based on the new evidence elicited at the hearing.[3]  The Defendant argues that his pre- *Miranda* statement denying possession of a gun was the result of custodial interrogation.  The Government argues that the Court should accept the version of the facts set forth by Officer

---

[2] The Defendant's statement "that they saying I did something and I did not do it," appears to refer to the suggestion that Defendant committed a robbery, which Defendant denied in the recorded statement to Denkins. The Defendant admitted possessing the gun in his statement to Denkins and in his testimony at the suppression hearing.

[3] The Government filed its brief late, without a separate motion for leave to file an out-of-time submission.  The Defendant, who did not file a reply brief, does not request that the Court decline to consider the Government's submission.  The Court will therefore excuse the late submission.

Daniels, who testified that he simply said "I found it," without referring to a gun, at which point Defendant stated "I didn't have a gun."  The Government also argues that, even assuming Defendant's version of the conversation, Officer Daniel's and Jones's statements did not constitute interrogation.

The argumentation as to the post- *Miranda* statement or statements is more unclear.  The Defendant continues to argue, based on his testimony at the hearing, that he only made one post- *Miranda* statement, and that was the one to Detective Denkins.  The Defendant argues, based on his clear testimony on this point, that he did not make a separate statement to Officer Daniels, although he acknowledges that the "Caucasian officer," presumably referring to Daniels, furnished *Miranda* warnings.  The Defendant argues that his solitary post- *Miranda* statement must be suppressed because it was made after and in reliance on Detective Denkins's statement contradicting *Miranda*, that is, that "[t]here's nothing going to happen to you, I promise you that."  Gov't Ex. 2 at 5.

Notably, the Government's post-hearing brief on this point does not continue to argue that there were two post- *Miranda* statements, that is, an initial one to Officer Daniels and then a second one to Detective Denkins.  Rather, the Government's brief now states that there is only "one post-Miranda statement at issue," and that "[t]he post-Miranda statement was made to Detective Denkins." Gov't Reply [72] at 2.  The Government's brief does not otherwise address, refute

or state any opposition to the Defendant's factual testimony or his legal arguments that the Court should find the existence of only a single post- *Miranda* statement.

Rather, the Government's sole argument against suppression of Defendant's post- *Miranda* statements is that Detective Denkins's promise that "[t]here's nothing going to happen to you, I promise you that," was not sufficient to vitiate the *Miranda* waiver that Defendant had already expressed. [72] at 5-6.  According to the Government, because Daniels already furnished Defendant his *Miranda* rights and secured a waiver before Denkins met with Defendant, "any waiver of Miranda could not have flowed from anything the detective said to Barber," and "[t]here is no evidence whatsoever that Barber contemplated revoking the waiver at any time." *Id.*

## ARGUMENT

A.  *Defendant's Pre- Miranda Statement "I Didn't Have a Gun" Was Not The Result Of Interrogation And Should Not Be Suppressed*

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that a suspect who is in custody must be advised of his right to remain silent and of his right to the assistance of counsel prior to any interrogation by law enforcement.  It is not disputed that Officer Daniels ultimately furnished the Defendant with *Miranda* warnings, but it is also not disputed that Officer Daniels did so only after Defendant made the statement, while in custody, that "I didn't have a gun."  The

Government's argument opposing suppression of this statement is that it was a spontaneous utterance, and not the result of any interrogation by Daniels.

It is well established that *Miranda* only applies where "a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980); *Cannady v. Dugger*, 931 F.2d 752, 754 (11th Cir. 1991) ( "Voluntary and spontaneous comments by an accused ... are admissible evidence if the comments were not made in response to government questioning").  Officers engage in the "functional equivalent" of express questioning when they use "any words or actions ... (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Innis*, 446 U.S. at 309 n. 5. In determining "whether the police practice was so coercive that it was likely to evoke an incriminating response," we must "focus[ ] primarily upon the perceptions of the suspect, rather than the intent of the police." *United States v. Stubbs*, 944 F.2d 828, 832 (11th Cir. 1991).

The Defendant's argument is that his statement "I didn't have a gun" was made "in response to questioning from Officer Jones."[4]  According to Defendant,

---

[4]  As noted above, Defendant also allegedly stated "I didn't rob anybody," which statement Defendant also alleges resulted from interrogation from Officer Jones.  The Government, however, has indicated that it will not introduce this statement at trial and therefore the Court considers the question of suppression of this statement to be moot.

Officer Jones stated to Defendant "you know you robbed that man," before furnishing any *Miranda* warnings.  Officer Jones did not testify at the hearing, and Officer Daniels did not hear the interactions between Jones and the Defendant, so there was no contrary evidence offered as to what Jones did or did not say. Therefore, the Court accepts the Defendant's uncontroverted testimony as to the interactions with Officer Jones.

Nevertheless, it is not logical to conclude that Defendant's statement that "I didn't have a gun" was made in response to Officer Jones's statement that "you know you robbed that man."  Rather, it is far more logical to conclude that this statement disclaiming possession of a gun was made in response to Officer Daniels's statement specifically about finding the gun.  Indeed, this is what the witnesses said.  According to Daniels, "[a]s soon as I said that [i.e., 'I found it'], Mr. Barber stated that he didn't have a gun."  1ˢᵗ Hearing Tr. at 11.  Indeed, while the Defendant disputes what Daniels said about finding the gun, the Defendant agrees that he (the Defendant) said "that ain't my gun," specifically in response to Daniels' comment about finding the gun, not in response to anything Jones had said.  *See* 2d Hearing Tr. at 19.

The Court does not find that the statement by Daniels constituted functional interrogation.  According to Defendant's version of the events, Daniels asserted to him, "I found your gun."  Assuming that this is what happened, simply disclosing

evidence to a suspect is not necessarily the functional equivalent of interrogation. *See United States v. Suarez*, 162 F. App'x 897 (11th Cir.2005) (telling suspect in custody the positive results of a drug field test was not functional equivalent of interrogation); *United States v. McKenzie*, 132 F. App'x 788 (11th Cir.2005) (telling suspect in custody that officers had found drugs in his residence pursuant to execution of search warrant was not functional equivalent of interrogation); *United States v. Payne*, 954 F.2d 199 (4th Cir. 1992) (agent's statement to suspect in custody that "[t]hey found a gun at your house" was not functional equivalent of interrogation).

Obviously, context is everything, and there can be a point at which confronting a suspect with evidence can have the likely impact of inducing him to speak. *See, e.g., United States v. Green*, 541 F.3d 176, 187 (3d Cir. 2008) (finding functional equivalent of interrogation when police showed Defendant video depicting Defendant engaged in the criminal activity). But Daniels' minimal statement here was much more analogous to those that the Eleventh Circuit and other courts have found not to constitute interrogation in *Suarez*, *McKenzie*, and other cases.

In any event, the Court finds Daniels' version of the conversation more

likely to be true.[5]  According to Officer Daniels, he simply stated to the other

Officer, Jones, "I found it."  The Court does not consider one officer simply

commenting to another officer that he found something, at least on the facts

presented here, to be the functional equivalent of interrogation.

Therefore, the Defendant's alleged statement "I didn't have a gun" should

not be suppressed notwithstanding having been made prior to the furnishment of

*Miranda* warnings.

_____

[5] The Court does not simply take the word of the officer over that of the
Defendant.  What the Court finds most probative is that the witnesses testified
about events that occurred more than two years earlier, and that Daniels's
recollection was corroborated by his contemporaneous written memorialization of
the conversation on the very day of the arrest.  *See* [71] at 2 (police report) ("I told
Ofc Jones 'I found it!,' and immediately Barber stated to Ofc Jones 'I didn't have
no gun.'").  The Court finds it questionable that Defendant, by contrast, would
accurately recall the precise wording of this particular conversation over two years
later simply based on memory, especially given everything else that happened to
him that evening.  The Court also questions why this testimony was offered in the
second evidentiary hearing, as it related solely to refuting testimony offered at the
first hearing.  An assessment of the reliability or credibility of the Defendant's
version of the events, in other words, cannot help but be impacted by the fact that
he had several months to contemplate what Daniels said and how he could respond.
Nevertheless, it is not necessary for the Court to consider whether it believes the
Defendant testified untruthfully.  It is sufficient for purposes of these findings that
the Court finds Daniels's recollection more likely to be accurate as it is supported
by a contemporaneous written note and not based simply on a two year-old
memory.

B.     *Defendant's Post-Miranda Statement Should Be Suppressed, As That Statement Was Made After the Detective Made Promises To The Defendant Contradicting Miranda*

The mere furnishment of *Miranda* warnings is not sufficient to establish the admissibility of a confession.  The Supreme Court also made clear that the Government has the burden to show the knowing and intelligent nature of a waiver. *See Miranda*, 384 U.S. at 475.  Indeed, the Supreme Court made clear that "[if] the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests upon the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."  *Id.*

The Court instructs us to look for two things in assessing this question:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal[s] both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quotation marks and citation omitted).

It is well established that the police can undermine the voluntariness of a suspect's decision to waive his rights and confess, by falsely assuring or suggesting

to a suspect that his statements could not hurt him.  *See, e.g., United States v. Lall*, 607 F.3d 1277, 1283 (11th Cir. 2010) (officer's assurance to defendant, despite furnishment of *Miranda* warnings, that he "was not going to pursue any charges against him," contradicted those warnings and rendered the defendant's *Miranda* waiver and confession involuntary); *United States v. Beale*, 921 F.2d 1412, 1435 (11th Cir. 1991) (agents procured involuntary waiver by telling the suspect that signing the waiver form "would not hurt him."); *Hart v. Attorney Gen. Of the State of Fla.*, 323 F.3d 884, 894-95 (11th Cir. 2003) (officer contradicted *Miranda* and rendered a waiver involuntary by telling a suspect, in response to the suspect's questions about whether he should get a lawyer, that one disadvantage of having a lawyer would be that "the lawyer would tell Hart not to answer incriminating questions," whereas "honesty wouldn't hurt him.")

The issue in this case is whether Denkins similarly contradicted *Miranda* by assuring Defendant, after the Defendant hesitated about answering Denkins's questions, that "[t]here's nothing going to happen to you, I promise you that."

Here, the Government makes three arguments in an attempt to meet its burden to show that the Defendant's *Miranda* waiver and statements to Denkins were voluntary.  First, the Government points out that Daniels previously issued *Miranda* warnings and that the Defendant expressed that he would waive his *Miranda* rights prior to any conversation with Denkins, and that therefore "any

waiver of Miranda could not have flowed from anything the detective said to Barber."  Second, relatedly, the Government argues that "[t]here is no evidence whatsoever that Barber contemplated revoking his waiver at any time." [72] at 5-6.

These arguments are unconvincing in light of the specific conversation between Denkins and the Defendant.  The Defendant may generally have voiced a willingness to answer questions in response to Daniels' warnings.  But by the time of the Defendant's conversation with Denkins, the Defendant was clearly hesitating as to whether and under what conditions he would make any statements. The Defendant expressly stated, multiple times, "I don't wanna talk unless my sister is somewhere in my presence, man."  Gov't Ex. 2 at 8.  There is no evidence that the Defendant's sister was a lawyer, such that this statement could be construed as an invocation of Defendant's right to counsel.  But *Miranda* covers more than just a Defendant's right to counsel.  It more broadly includes his right simply to remain silent.  And, here, the Defendant was clearly contemplating invoking his right to remain silent, at least absent conditions that would make him more comfortable speaking, i.e., that his sister be allowed to be present.

Because the Defendant had the right to refuse to speak at all under any circumstances, it follows that he had the right to choose the circumstances in which he would waive that right.  Here, for whatever reason, Defendant stated that he would not waive his right to remain silent – or would re-invoke any such right –

unless his sister were present.  In direct response, Denkins ultimately convinced Defendant to waive or not re-invoke his right to remain silent, and talk without his sister, but only after assuring the Defendant that "[t]here's nothing going to happen to you, I promise you that."  The Court therefore rejects the Government's arguments that "any waiver of Miranda could not have flowed from anything the detective said to Barber,"or that "[t]here is no evidence whatsoever that Barber contemplated revoking his waiver at any time." [72] at 5-6.

The Government's only other argument is that "[n]otwithstanding and without citation to any authority, Barber claims that Detective Denkins's post-Miranda statement was contradictory to the Miranda warning, and thus presumably prevented Barber from revoking the waiver." [72] at 6.  But Defendant does cite authority on this question, however, that is, *Lall*, *Beale* and *Hart*.  It is the Government that fails to address or even mention those cases, or otherwise cite any authority suggesting how an officer's assurance that "[t]here's nothing going to happen to you, I promise you that," is consistent with *Miranda*.  To the contrary, this promise on its face contradicts *Miranda*, the purpose of which in part is to warn that suspects that incriminating statements may hurt them.

Detective Denkins may not have intentionally referred to possible evidentiary use of Defendant's statements when he assured the Defendant that "[t]here's nothing going to happen to you, I promise you that."  Rather, Denkins

could have been simply assuring the Defendant that no physical harm was going to come to him at the hands of the police.  But Denkins's subjective reason for saying "[t]here's nothing going to happen to you, I promise you that," is not the issue, and the Government makes no argument otherwise.  The issue, rather, is whether this statement objectively could have misled a suspect into believing that making incriminating statements would not be harmful, and if so whether that conduct led to the Defendant's decision to offer his statement.  *See United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (the courts look to whether the police activity was objectively coercive, whether it was sufficient to overcome a suspect's will, and whether in light of the totality of the facts it could be seen as a crucial motivating factor in the defendant's decision to speak).  Because the Government bears the "heavy burden" to show a voluntary waiver, *See Miranda*, 384 U.S. at 475, all doubts and ambiguities must be construed against the police in this regard.

Here, Denkins's assurance that "[t]here's ***nothing*** going to happen to you" was extremely broad.  The term "nothing" is absolute and unqualified, and necessarily excludes ***any*** impacts on Defendant from agreeing to speak with Denkins, including adverse evidentiary use of any statements.  Thus, whether this was Denkins's intent or not, the statement was objectively misleading and contradictory to *Miranda*.  And the facts show that the statement substantially motivated Defendant's decision to speak.  First, despite clearly considering re-

invoking his right to remain silent, Defendant declined to do so and made

incriminating statements about possessing the gun only after Denkins made these

assurances to him.  Second, Defendant directly testified that Denkins's statement

was material to his decision to speak: "[W]hen he told me that nothing wasn't

going to happen to me, then I felt comfortable about talking to him about what was

going on." [69] at 21.

Thus, Defendant's post- *Miranda* statements to Detective Denkins should be

**SUPPRESSED**.

C.      *Defendant Voluntarily Agreed to Make Post- Miranda Statements To*
        *Officer Daniels, Prior To Detective Denkins's Arrival At The Scene*

As noted above, the Government initially took the position that Defendant

offered separate unrecorded statements in response to questioning by Officer

Daniels, prior to any interaction with Denkins.  The major purpose of the second

evidentiary hearing, however, was to allow new proof on the question of whether

there were two statements or, as Defendant alleged, just one statement.  The

Defendant clearly testified to this point, and the principal thrust of his post-hearing

brief was to make the factual argument that the Court should find that only one

post- *Miranda* statement was made, that is, the suppressible statement to Detective

Denkins.

As explained above, the Government in its post-hearing response did not

address this issue at all, did not refute the Defendant's testimony or arguments denying a second confession, and to the contrary joined with the Defendant in stating that there is only "one post- Miranda statement at issue," and that "[t]he post- Miranda statement was made to Detective Denkins, who testified at the second hearing." [72] at 2.  This statement now appears to mirror the Defendant's position, in other words, that there was only one post- *Miranda* statement, to Detective Denkins.

The Court is confused by the Government's changing position, and is left unsure whether the Government has changed its mind on the facts, whether the Government has otherwise intended not to press this particular issue, or whether the failure of the Government's post-hearing brief to address this major issue was an oversight.  In any event, it is not proper for the Court to *sua sponte* consider a question that no longer appears to be in dispute, that is, whether there was an earlier post- *Miranda* confession.  *See United States v. Montes-Ramos*, 347 Fed. Appx. 383, 391 (10th Cir. 2009) (The Government's failure to respond to a suppression argument operated as a waiver of that issue).

Moreover, it is not clear whether such a factual dispute would even be within the province of the Court to resolve.  Of course, the Court must make pretrial findings as to the voluntariness of any confessions offered as evidence. But the factual dispute of what a Defendant specifically said and to whom is

typically reserved for resolution by the ultimate factfinder.  It is not clear that the Court has any business weighing in on such a question, unless doing so is necessary to assess whether the confessions were voluntarily-made and in compliance with *Miranda*.

For all of these reasons, the Court concludes that it must refrain from making any findings at this juncture as to whether one or two post- *Miranda* confessions occurred.  Nevertheless, to assist the District Court to the extent the Government re-asserts and is not deemed to have waived the position that Defendant made separate post- *Miranda* statements to Officer Daniels, the Court will offer the following conclusions on the issue of voluntariness.

While Defendant disputes whether he ultimately made statements to Daniels, he does not dispute the basic facts relating to voluntariness.  He makes no argument that Daniels failed to properly advise him of his rights, and Defendant does not deny that he at least initially agreed to waive those rights and answer questions voluntarily.  Indeed, Defendant admitted to Denkins in the recorded interview that Daniels had advised him of his rights and that Defendant had agreed to answer his questions.  Ex. 2 at 4.  The record also includes uncontroverted testimony from Daniels that he did in fact read Defendant his rights, and that Defendant agreed to waive them.  *See* 1st Hearing Tr. at 12-14.  While the Court has found that Denkins's anti-*Miranda* advice destroyed voluntariness from that

point onwards, it obviously did not impact the voluntariness of any statements Defendant had already made.

Thus, the facts at least show that Daniels voluntarily agreed to speak to Daniels, even though it may be disputed whether he ultimately did so.  In any event, there is no basis to suppress any such statements for being elicited in violation of Defendant's constitutional rights.

### D.    *Defendant's Pro Se Motion to Dismiss [53] Should Be Denied*

On December 15, 2014, Defendant filed a pleading *pro se* styled as a Motion to Dismiss Indictment, Motion to Challenge Jurisdiction, Motion to Dismiss Counsel and Appoint New Counsel [53].  After an *ex parte* hearing, the Court denied the motion to the extent it sought appointment of substitute counsel [56]. The Court now also **RECOMMENDS** that the Motion [53] be **DENIED** in all remaining respects, to the extent it seeks dismissal of the Indictment.

First, Defendant's Motion [53] was improperly filed, because Defendant was and continues to be represented by counsel, and a represented Defendant cannot also file materials himself *pro se*.  Second, Defendant's arguments are meritless. He argues that dismissal is warranted because the Indictment includes the wrong name.  Specifically, the Indictment charges an individual named "Cedric Barber" whereas the related state charges and conviction were under the name "Sedrick Deonta Barber."  Whether the Government has charged the wrong person,

however, is an evidentiary matter to be resolved at trial. For purposes of assessing the sufficiency of the Indictment, it is enough that the Indictment charges that an individual named "Cedric Barber" committed each of the elements of the crime charged. Whether the Government can prove these charges at trial – despite a dispute over identity or other defenses – is not something that the Court can adjudicate at this juncture in the case.

The Defendant's second argument appears focused on a 1999 statutory rape conviction in state court, which Defendant asserts was illegally-obtained because he was only 16 years old himself at the time of the conduct. The motion does not explain and the Court cannot otherwise discern how this argument is pertinent to the jurisdiction of this Court or the sufficiency of this Indictment, which does not appear to relate to the 1999 statutory rape conviction.[6]  The Court therefore **RECOMMENDS** that the Motion [53] be **DENIED**, both for having been improperly filed and, alternatively, on the merits.

---

[6] As a felon-in-possession charge, an element of this offense is that the Defendant had a felony conviction on his record at the time he possessed the gun. The Indictment alleges that Defendant had previously been convicted of numerous felonies, none of which include a 1999 statutory rape conviction. To the extent that the Government offers proof of such a conviction at trial, the propriety of that evidence or the extent to which it may be considered for any element of the offense is a matter to be addressed at trial to the trial judge. To the extent the Defendant is concerned that this old conviction may impact his sentencing calculations, that concern is not properly brought at this juncture in a motion to dismiss the indictment.

It is **ORDERED** that this matter is **READY FOR TRIAL**.

**IT IS SO ORDERED and RECOMMENDED** this 25th day of June, 2015.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE